PELLETIER CONSTRUCTION COMPANY *vs.* THOMAS D. TRULLIS.

MAY 9, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of assumpsit which was tried in the superior court to a jury and resulted in a verdict for the plaintiff. The case is here on defendant's exceptions to the superior court's denials of his motions for a directed verdict and for a new trial, and also on several other exceptions.

The plaintiff's declaration is in two counts. The first count alleges an express oral agreement between the parties for the building of certain concession stands by the plaintiff for the defendant at the Pascoag Race Track for which "the defendant agreed to pay to the plaintiff the cost of said work, labor, skill, care, diligence, goods and materials, plus fifteen (15) percent of said cost as compensation or profit

to the plaintiff." The second count declares on the common counts.

Defendant pleaded the general issue, and filed a motion for a bill of particulars, which was granted. In its bill of particulars plaintiff stated that the defendant requested plaintiff, through its president, Frederick Pelletier, to supply all the materials and, without plans or specifications, do all the necessary work, which defendant would request, for the purpose of constructing speedily certain designated buildings and rooms incidental to the operation of the Pascoag Race Track. It was further stated therein that "plaintiff would be paid by defendant on a cost plus basis, that is, for labor, materials and a profit of 15% on same, together with a reimbursement of the necessary insurance premiums for Workmen's Compensation, Public Liability, Social Security, Rhode Island Unemployment Insurance, and a charge for office and administration expenses."

Whether such a contract, as thus stated in plaintiff's first count and in its bill of particulars, was ever entered into is to be determined from the testimony of plaintiff's president and general manager, Frederick Pelletier, and the defendant. Each testified that the plaintiff corporation undertook the job as a result of a conversation or conversations between them in which they agreed on what basis the job was to be performed and paid for. Each told a somewhat different story of the scope of such conversation or conversations, especially as to the basis for payment of compensation to the plaintiff in consideration of its performance of the job. There is no writing or witness which corroborates the testimony of either of them on this phase of the case.

Pelletier testified that the defendant wished the job to be done as speedily as possible, as the time was rapidly approaching for the opening of the track, and that defendant wanted his stands ready at that time. He also testified that defendant had no plans or specifications of the work which would be required and told him, Pelletier, to look

at similar stands at the Narragansett Track in Pawtucket and use them as a guide in planning the work. Pelletier further testified that he stated to defendant that the plaintiff would take the job under such conditions on a cost plus basis and that defendant agreed to such arrangement. He, however, did not testify that there was any discussion in that conversation of any specific percentage of cost as plaintiff's profit or compensation for performance, or that the other items set out in the plaintiff's bill of particulars were discussed. In fact, he admitted on cross-examination that they were not mentioned.

Defendant testified that neither cost plus nor any of the other items of the bill was discussed, but he admitted that the agreement was otherwise substantially as testified to by Pelletier. He also testified that the only basis on which the rate of payment for the work and materials could be predicated, and which he understood was the basis of payment agreed to, was an assurance by Pelletier that the plaintiff would be "fair" in charging for the job. Defendant further testified that it was his understanding of this assurance that plaintiff would charge him for the fair value of the materials and labor which were reasonably required to complete the job at the time defendant desired. In other words, he admitted that time was an important element of the contract.

The work was completed on time, and defendant was satisfied with the result. At least he made no complaint. He paid plaintiff $1500 on account on September 29, 1941 before a bill was rendered and $1000 on November 5, 1941 after he had received a bill, which was rendered by the plaintiff on October 7, 1941. At the suggestion of the defendant this bill was corrected and an adjustment made in his favor so that as finally rendered it was in the total sum of $4580.01, consisting of labor and materials, $3647.67; workmen's compensation and public liability, $135.78; office and administration expenses, $36.48; social security and state unemployment taxes, $67.89; 15% profit on labor and materials,

$547.14; and a small job of additional work amounting to $145.05. Defendant did not complain about the amount of the bill until the following summer of 1942, when he complained to Pelletier that he had been overcharged. After unsuccessfully attempting to have plaintiff consent to an arbitration of their differences, defendant declined to pay the balance of $2080.01 due on the bill as rendered.

Plaintiff brought suit and the jury returned a verdict for such balance, plus interest. Plaintiff contends that this verdict apparently reflects the jury's view that there was an express contract as substantially alleged in the first count of its declaration. Plaintiff further contends that such verdict may also reflect the view of the jury of an agreement between the parties, aside from the alleged express contract, that plaintiff was to charge for the work on a "fair" basis, as claimed by defendant; and that the plaintiff's bill for labor and materials plus a profit and other charges was a fair and reasonable compliance with such agreement.

We are of the opinion that this latter contention is without merit. It appears to us that the verdict was clearly based upon the plaintiff's first count as extended by its bill of particulars. Its valuation of the labor and materials, its 15% profit on the cost of such labor and materials, its precise estimate for office and administration expenses, and other expenses, are the unmistakable components of that verdict. There is no other evidence in the case upon which the verdict could reasonably be based. In denying defendant's motion for a new trial it does not appear that the trial justice considered that plaintiff's evidence tended to prove any agreement other than that specifically alleged in plaintiff's first count, or that the jury's verdict could be based upon any other supposed agreement or upon the common counts.

We are of the opinion that there is no justification for construing the verdict as one based upon the common counts. If it is to stand it can only be upon the first count, alleging an express contract as extended by plaintiff's bill

of particulars, and not upon any alternative express agreement as argued by plaintiff. We are of the further opinion that there is no evidence to support an express contract as specifically described in the bill of particulars. Defendant denied that Pelletier ever mentioned, in their conversation leading up to the agreement, charges for workmen's compensation, unemployment insurance, administration and office expenses, or 15% profit on the cost of the job, and Pelletier admitted that he had not.

Plaintiff, however, contends that such details may be reasonably implied as necessary costs of the job which should be added to the actual cost of labor and materials. And it contends further that it may be reasonably inferred that a profit was intended by the parties to be realized by the plaintiff and that such a profit of 15% of the cost of the job was a reasonable one which may be implied to have been within the contemplation of the parties. In approving the verdict and denying defendant's motion for a new trial, the trial justice appears to have adopted substantially those views.

We cannot agree with such contentions in full, as they go beyond what is a reasonable implication from the uncontradicted portions of the testimony as to the conversation of Pelletier and defendant in finally coming to an agreement about how the job should be done and on what basis of compensation. We can and do agree, however, with the contention that the jury was justified by the evidence in finding that the job was taken by the plaintiff on a cost plus basis. Pelletier testified that the work was to be done on that basis. Defendant denied this and testified that plaintiff was to be paid fair value. The jury apparently believed Pelletier on this point, and so did the trial justice. At least to that extent we cannot say, from our reading of the transcript, that the trial justice was clearly wrong.

If the testimony of both Pelletier and the defendant is analyzed and carefully weighed in the light of the circumstances under which the plaintiff was approached by the de-

fendant to do this work and the manner in which the work was done in the almost daily presence of the defendant, it is clear that what was really agreed to was that the job was to be done on a cost plus basis and that the "plus" in the minds of the parties was "plus a fair profit" to the plaintiff. This construction is, in our opinion, fair and reasonable and it gives effect to the testimony of both Pelletier and the defendant. In other words, the extent of the profit was not specifically agreed upon in advance but it was expressly agreed that it was to be "fair" to the defendant.

Upon this view the questions to be determined are whether it is fair to the defendant to charge him 15% of the cost of the job as a profit to plaintiff and also to add to the cost of doing the job the specific charges set out in the plaintiff's bill of particulars. If there was evidence on these questions from which the jury could reasonably find that all of these charges were not only fair and reasonable but also legitimately to be inferred from an agreement to do the job on a cost plus basis, then the jury's verdict here could be sustained in full under the plaintiff's first count. But there is no evidence in the record that these items were contemplated by the parties or that it was reasonable or customary to add such charges as a part of the cost on a cost plus contract. These items cannot be implied as a matter of law. They are not in their nature fixed and rigid, or generally understood as invariable and inevitable incidents of such a contract. They lie rather in the field of fact and are matters of proof as such in any given case. There is, however, some evidence that 15% is a fair and reasonable profit under such a contract, and there was no contrary evidence introduced by the defendant.

Under a liberal construction of the first count, the plaintiff has alleged merely a cost plus contract, that is, cost plus a fair profit, and plaintiff's further allegation of 15% of the cost as the measure of such profit represents no more than what plaintiff conceived to be a fair profit. The evidence clearly proves such a contract and is sufficient in the

circumstances to warrant an amendment, if necessary, of the declaration to conform to the proof, as requested by plaintiff. But the evidence does not support an award of damages in the full amount of the jury's verdict, because such award includes certain items of cost that have not been proved, although they were set out in the bill of particulars. Those items are: workmen's compensation and public liability insurance (8% of the labor cost) $135.78; social security and state unemployment insurance taxes (4% of the labor cost) $67.89; and office and administration expenses (1% of the cost of labor and materials) $36.48. To warrant the inclusion of such items in their verdict, it was necessary for the jury to have some evidence either that they were actually contemplated by the parties or that custom authorized them to be added as a necessary part of the cost in a cost plus contract. There was no such evidence. We are of the opinion, therefore, that the defendant is entitled to a new trial, unless plaintiff remits such part of its damages as is represented by the total of such items.

On the above view of the pleadings and the evidence, all of defendant's exceptions, other than his exception to the denial of his motion for a new trial, are overruled. His exception to the trial justice's denial of his motion for a new trial is sustained on the ground that the damages awarded by the jury are excessive.

The case is, therefore, remitted to the superior court for a new trial on all issues, unless the plaintiff, on or before May 17, 1944, shall file in the office of the clerk of the superior court a remittitur of all of such damages in excess of $1839.86, plus interest. If such remittitur is duly filed, the superior court is directed to enter judgment on the verdict as reduced by the remittitur.

*Eugene L. Jalbert, Adonat J. Demers,* for plaintiff.

*Aram A. Arabian,* for defendant.